J^FITZSIMMONS, Judge.
This suit began as a suit for damages in tort arising out of an automobile accident. The plaintiff-husband, Jesse Brown, Sr., was driving a truck while in the course and scope of his employment. The vehicle he was driving was struck from behind by *874 another truck driven by a corporate employee, Larry Grabert, Jr. The vehicle driven by Mr. Grabert was insured by Allstate Insurance Company (Allstate). Mr. Grabert’s employer, Grabert & Son Motor Service, Inc., was insured by Lincoln Insurance Company (Lincoln).[2] The wife of the plaintiff-husband, Juanita Brown, is a party plaintiff claiming loss of consortium. Subsequently, Mr. Brown’s employer, Terrebonne Lumber and Supply Co., Inc., and its workers’ compensation insurer, Clarendon National Insurance Co. (Clarendon), intervened seeking reimbursement for workers’ compensation benefits paid to Mr. Brown.
After a trial by jury, judgment was rendered against the Graberts and Allstate on September 27,1997. The judgment was in favor of: Mr. Brown for $182,400.00, Mrs. Brown for $9,500.00, and the workers’ compensation insurer-intervenor, Clarendon, for $42,001.15. The Browns’ claims against the designated excess insurer, Lincoln, were dismissed, without prejudice. The portion of the judgment specifically in favor of Clarendon provided as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the intervention of CLARENDON NATIONAL INSURANCE COMPANY, in the amount of FORTY-TWO THOUSAND ONE AND 15/100 ($42,001.15) DOLLARS, is recognized and valid, and is to be paid by JESSE BROWN, SR. and JUANITA BROWN on a first priority basis, out of the Judgments that were issued to JESSE BROWN, SR. and JUANITA BROWN, described above. (Emphasis added.)
Appeal proceedings were commenced, but were abandoned after the plaintiffs, Allstate, Lincoln, and their insureds reached a settlement. Thus, the September, 1997 judgment is res judicata.
In settlement, the plaintiffs, represented by Mr. Stephen Callahan, (1) agreed to accept $205,000, from which they would pay Clarendon’s “intervention award,” and (2) agreed to a hold harmless clause in favor of Allstate. According to Mr. Callahan, a ^former counsel for Clarendon generally agreed to settle the matter with the Browns for $22,000. However, no writing to that effect was produced. Mr. Callahan also asserted that he tried to contact new counsel for Clarendon before the date the funds were to be disbursed to the Browns. Mr. Callahan hoped Clarendon intended to honor the alleged preliminary agreement. Allstate and the excess insurer, Lincoln, sent checks to Mr. Callahan for the full amount of the settlement, $205,000. However, the checks were made out to the Browns and Mr. Callahan only, not Clarendon. Additionally, Mr. Callahan failed to reserve the requisite funds for payment of Clarendon’s claim. Although funds were disbursed to the Browns and the 1997 judgment ordered the Browns to pay Clarendon, they did not.
After plaintiffs failed to pay Clarendon, it proceeded against plaintiffs, Mr. Callahan, and Allstate by a motion to enforce the 1997 personal injury judgment. In response, Allstate filed a motion to enforce the settlement and Mr. Callahan filed a motion to withdraw as counsel for the Browns.
After a hearing, a judgment was signed on March 4, 1998. The judgment allowed Mr. Callahan to withdraw as counsel based on a conflict of interest with his clients, ordered Mr. Brown to deposit $42,001.15 into the registry of the court, reserved to *875 all parties any defenses against Clarendon, and reserved to Clarendon any rights to compel payment of the judgment by Mr. Callahan and Allstate. Subsequently, Mr. Brown deposited $23,000 into the registry of the court. During a later hearing, Mr. Brown explained to the court that $23,000 was all of the settlement funds that remained.
Clarendon then filed another motion to enforce judgment. It asked that Allstate “and/or Stephen Callahan” be required to deposit the remainder of Clarendon’s intervention award, $19,001.15, into the court’s registry. Allstate also filed a motion to enforce judgment and asked the court to order Mr. Callahan to deposit $19,001.15 into the court’s registry. Mr. Callahan filed a motion to strike the. Clarendon and Allstate ^motions to enforce, arguing that he had not been served with any “petition asserting any cause of action against” him personally.[3]
Surprisingly, after withdrawing as counsel for the Browns, Mr. Callahan filed a motion for Moody fees[4] on behalf of the Browns on May 12, 1998. Clarendon objected to the filing of the motion for fees by Mr. Callahan, based on his conflict of interest with his clients.
On November 24, 1999, a hearing on the motions was held in district court before a temporarily appointed judge.[5] At the hearing, the district court noted that the 1998 judgment ordered Mr. Brown to deposit the disputed amount into the registry of the court and reserved any - rights against Allstate and Mr. Callahan that may exist. The district court considered the legal or ethical duties Mr. Callahan or Allstate had to insure proper payment, but essentially found that neither the 1997 nor the 1998 judgment ordered Mr. Callahan or Allstate to pay Clarendon or to deposit money into the court’s registry. Thus, the court found no basis existed for enforcement of the 1997 judgment against Mr. Callahan or Allstate. The district court opined that an action against Mr. Callahan by the state bar association may lie, but denied both motions to enforce. Finally, although the motion for Moody fees was filed only on behalf of the Browns, the district court awarded Moody fees of one-third of the $23,000 in the registry of the court to Mr. Callahan personally, and awarded the remainder of the money to Clarendon.
Before a judgment was signed, a new judge was elected and replaced the temporarily appointed judge. This third judge in the proceedings signed a judgment on April 5, 2000. That judgment incorporated the decisions rendered by the temporarily appointed judge in open court on November 24, 1999, dismissed the claims against Mr. Callahan and Allstate, and awarded Moody fées.
1 ^Clarendon appealed the April 5, 2000 judgment. It asserts.three assignments of error. In assignments one and two, Clarendon complains of the trial court’s denial of reimbursement to Clarendon from Mr. Callahan and Allstate. In assignment of error three, Clarendon attacks the award of Moody fees to Mr. Callahan. Finding some merit in the criticism of the Moody award, we affirm in part, reverse in part, and remand.
*876 CLARENDON’S CLAIMS FOR REIMBURSEMENT
Clarendon chose to seek reimbursement from Mr. Callahan and Allstate by filing motions to enforce a prior judgment. The proper issue on the motions to enforce was whether Mr. Callahan or Allstate had been ordered by a prior judgment to pay the intervention. Mr. Callahan and Allstate defended based on the vehicle chosen. Notwithstanding any ethical or legal duty owed by Mr. Callahan or Allstate, the district court correctly found that no prior judgment ordered Mr. Callahan or Allstate to pay Clarendon. For this court to find Mr. Callahan or Allstate liable on the basis of a duty to insure Clarendon received its payment, a provision of the settlement, or the right to sue under La. R.S. 23:1101 B, would require this court to make credibility determinations not considered or decided by the court below. Thus, we see no error in the denial of the motions to enforce.
Mr. Callahan and Allstate did not have fair notice that Clarendon was attempting to pursue a separate action against them for damages based on tort, contract, or other applicable law, not raised in the Browns’ tort suit. Certainly, pleadings may be amended, and even enlarged. La. C.C.P. arts. 1151, et seq. However, a motion to enforce a prior judgment cannot be “amended” into a new suit that results in a new and different judgment for damages in disregard of due process rights to fair and reasonable notice and hearing. If Clarendon wishes to pursue an action against Mr. Callahan or Allstate for damages, it must file a suit with the required factual allegations to support its causes of action and effect proper service against the true targets of its action, Mr. Callahan and Allstate. Discovery and a proper trial can then be held. The real possibility that causes of action may lie against Allstate and Mr. Callahan, whether based on tort, contract, or La. R.S. 23:1102, is not a sufficient reason for changing motions to enforce into wholly new suits and judgments on other | ^grounds. Such a metamorphosis, from an old judgment into a new and different judgment based on new causes of action, could serve as a basis for manipulation of prescriptive periods and disregard of due process in future cases. There is no phoenix here.
THE MOODY CLAIM
Clarendon asserts that the trial court erred in awarding Moody fees to Mr. Callahan. We agree.
The assessment of Moody fees is provided for in La. R.S. 23:1103 C(l), in pertinent part, as follows:
“If ... the employer ... intervenes in the third party suit filed by the other, the intervenor shall only be responsible for a share of the reasonable legal fees and costs incurred by the attorney retained by the plaintiff, which portion shall not exceed one-third of the interve-nor’s recovery for prejudgment payments .... The amount of the portion of attorney fees shall be determined by the district court based on the proportionate services of the attorneys which benefited or augmented the recovery from the third party.... Costs shall include taxable court costs as well as the fees of experts retained by the plaintiff. The pro rata share of the intervenor’s costs shall be based on intervenor’s recovery of prejudgment payments .... ”
Initially, we note that the motion for fees was filed on behalf of the Browns, not Mr. Callahan. However, the record contains no evidence that Mr. Callahan had re-enrolled as counsel of record for the Browns or that the conflict of interest had been resolved. It also appears from the *877 record that Mr. Callahan did not provide a sufficient basis for an award of approximately $7600 in fees, especially in light of the problems that arose from his failure to pay the intervention. See Moody v. Arabie, 498 So.2d 1081, 1086 (La.1986) and La. R.S. 28:1103 C. For these reasons, we reverse the award of Moody fees to Mr. Callahan, and remand for another hearing on that issue consistent with this opinion.
For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. The costs of the appeal are assessed equally between appellant, Clarendon, and appellee, Allstate.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
DOWNING, J., concurs.
WALTER I. LANIER, JR., J., dissenting in part and concurring in part and assigns reasons.

. Mr. Grabert and Grabert & Son Motor Service, Inc. are hereinafter referred to as the Graberts.

.It does not appear that the trial court treated the motion to strike as an exception of no cause of action or resolved the dispute by recognizing or ruling on an exception of no cause of action. See La. C.C.P. art. 925 B.

. See Moody v. Arabie, 498 So.2d 1081 (La.1986), as adopted and confirmed by La. R.S. 23:1103 C.

. The original judge in the matter had been elected to the court of appeal.